UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY G. THURMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:14-cv-01958-NCC |
| ) | |
| CINDY GRIFFITH,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 4). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 12). After reviewing the case, the Court has determined that Petitioner is not entitled to relief. As a result, the Court will **DENY** the Petition and **DISMISS** the case.

### I. BACKGROUND

In January 2007, Petitioner was charged with one count of first-degree murder for the murder of Ricky Haynes ("Haynes") and two counts of Class C felony stealing for taking two cars belonging to Haynes in St. Francois Circuit Court (Doc. 10-2 at 36-37). On September 21, 2007, the State filed a notice of aggravating factors in support of the death penalty (*Id.* at 9). On December 7, 2011, Petitioner pleaded guilty to first-degree murder pursuant to a plea agreement with the State (*Id.* at 29; Doc. 10-1 at 2). At the plea hearing, when asked how many times Petitioner had discussed his case with plea counsel, Petitioner agreed it was well over 40 times and further stated that counsel had spent close to 100 hours with him (Doc. 10-1 at 2). Petitioner

---
[1] Petitioner is currently incarcerated at Potosi Correctional Center in Mineral Point, Missouri. Cindy Griffith is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

also testified that he was satisfied with counsel's assistance, felt he had sufficient time to consult with counsel before pleading guilty, and felt he had been fully informed of all charges and defenses available to him (*Id.* at 2-3). Petitioner stated he had not been threatened or coerced into pleading guilty and acknowledged the rights he was waiving by doing so (*Id.* at 3). In exchange for Petitioner's guilty plea, the State withdrew its notice of intent to seek the death penalty and dismissed the two counts of stealing (*Id.* at 2-3). The Circuit Court accepted Petitioner's plea and sentenced him to life without parole in the Missouri Department of Corrections (*Id.* 6, 39-40).

On March 1, 2012, Petitioner filed a motion for post-conviction relief (*Id.* at 33, 48-52). On December 4, 2012, with the assistance of counsel, Petitioner filed an amended motion (*Id.* at 34, 58-74). Without holding an evidentiary hearing, the motion court denied Petitioner's motion on January 8, 2013 (*Id.* at 34, 75-77). On February 10, 2013, Petitioner appealed the motion court's decision, raising the following ground for relief: the motion court clearly erred in denying Petitioner's post-conviction relief motion in that counsel was ineffective because there was not pretrial determination of whether Petitioner is mentally retarded,[2] and thus categorically ineligible for the death penalty (*Id.* at 34; Doc. 10-3 at 8).

On appeal, Petitioner asserted that, if afforded a hearing, he would provide medical records that establish Petitioner's mental retardation and that he is, therefore, ineligible for the death penalty under state statute. Specifically, before the post-conviction appellate court, Petitioner outlined his medical and school history as follows:

> Thurman pleaded that medical records in counsel's file would have shown that Thurman was born in August of 1985. He was delivered by Caesarian section, under general anesthesia, due to failure to progress. Thurman started experiencing seizures at

---

[2] This phrase is used throughout the order to maintain consistency as it was the legal term of art imbedded in the statute at the time of Petitioner's plea and sentencing. *See* 565.030.6 (effective until Aug. 27, 2014).

nine months of age. At less than a year old, he was evaluated at Farmington Community Hospital and Spirit of St. Louis Hospital and found to have an abnormal EEG and CT scan. Those tests revealed "asymmetrical ventricles" of the brain. He was placed on 20 mg of phenobarbital twice a day at the age of eleven months.

At a very early age Thurman experienced difficulty in the normal classroom setting. In 1990, at the age of five, he was evaluated at Rolla Regional Center. Intelligence testing at that time found a full scale score of 75. Thurman was placed in special education. In 1993, Thurman was having difficulty keeping up in first grade and was evaluated at Neurologic Associates of Cape Girardeau. Dr. Steven Mellies noted that Thurman's problems were organic versus psychiatric and that he would benefit from special education. An EEG performed by Neurologic Associates showed abnormalities in brain functioning.

Thurman's school counselor reported to Dr. Mellies that Thurman has "across the board learning problems." By 1994, Thurman was being prescribed Ritilan for Attention Deficit Disorder in addition to his anti-seizure medication. In 1996, Thurman was evaluated by Children's Haven in Farmington. Children's Haven noted that Thurman was of borderline intelligence and made reference to a prior CT scan that showed scar tissue on Thurman's brain. Thurman was referred to a psychiatrist.

In 1997, another EEG showed generalized "spike and wave" abnormalities consistent with seizure disorder. In 1998, Thurman was seen by Dr. David Mullen at the Bonne Terre Medical Associates. Dr. Mullen's notes indicate that Thurman "probably has mild MR or significant learning disabilities . . . testing showed low IQ and couple grades behind." An IQ test performed on May 20, 1998 showed a full scale IQ of 67.

In 1999, Thurman was being home schooled by a public school teacher. At a meeting at Rolla Regional Hospital, a plan was devised recommending that Thurman continue being home schooled, that the family be provided with respite services, and that he needed more community involvement. The plan reports that his diagnosis is "ADHD, mild mental retardation, damage to . . . brain and epilepsy."

In 2000, at the age of fifteen, Thurman was hospitalized after attempting suicide by hanging himself. While at the Spirit of St. Louis hospital he is [sic] diagnosed with "Major Depression, Impulse Control Disorder NOS, Parental/Child Relational Problem, Oppositional Defiant Disorder and Mild Mental Retardation." At Lakeland Hospital later that year he was given a Peabody Picture Vocabulary Test and scored a 79. In a Social Service evaluation performed while at Lakeland, he was characterized as mentally retarded. In a Lakeland School assessment, Thurman is [sic] also diagnosed as mentally retarded. At the age of sixteen, an evaluation was performed by the West County R-IV school district in Park Hills, and Thurman was diagnosed as "moderately mentally retarded" with a Full Scale IQ of 69. And once again, an abnormal EEG was found. In 2003 Thurman was evaluated by psychologist Kenneth Mayfield. The test reports that Thurman's speech and mental activity are "clearly somewhat illogical." Intelligence testing found a Full Scale IQ of 71. In June of 2006 Thurman was evaluated by Vocational Rehabilitation Services and found to be eligible due to "Mental Retardation" with an I.Q. of 69.

Thurman was evaluated by neuropsychologist Dr. Robert Heilbronner, at the request of plea counsel, in 2008. Dr. Heilbronner found that Thurman suffered cognitive deficits in intellectual functions, academic abilities, attention skills, learning and memory

(both auditory and visual information), and certain language skills. The most pronounced difficulty demonstrated on executive functions. He further found that there is "clear and convincing evidence of brain-based disturbances in neuropsychological functions that arise from brain damage in early infancy." Dr. Heilbronner administered the WAIS 3 and found a Full Scale IQ of 72.

In 2010 upon the recommendation of Dr. Heilbronner, plea counsel further explored the question of Thurman's intellectual functioning. At the request of counsel, Dr. Stephen Greenspan evaluated Thurman to determine if he qualified for an exemption to death by execution under *Atkins v. Virginia*, 536 U.S. 304 (2002) due to mental retardation. Dr. Greenspan found that Thurman met all three criteria for mental retardation pursuant to Section 564.030, RSMo.

(Doc. 10-3 at 10-13) (internal citations omitted).

On March 11, 2014, the Missouri Court of Appeals for the Eastern District affirmed the Circuit Court's denial of the motion (Doc. 10-5). In affirming the motion court's denial, the post-conviction appellate court did not review whether Petitioner was entitled to an evidentiary hearing because the issue was not contained within his Point Relied On as required by Missouri Supreme Court Rule 84.04(d)[3] (*Id.* at 4 n.5). Thereafter, applying Missouri state law analogous to the *Strickland* standard, the post-conviction appellate court found the Petitioner failed to overcome the presumption that his plea counsel's advice was sound trial strategy in light of the inconclusive evidence of his mental functioning (*Id.* at 5-6). The post-conviction appellate court further found that Petitioner failed to establish the prejudice prong because even if Petitioner

---

[3] Missouri Supreme Court Rule 84.04(d) states, in relevant part:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) Identify the trial court ruling or action that the appellant challenges;

(B) State concisely the legal reasons for the appellant's claim of reversible error; and

(C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

4

obtained a pre-trial determination that he suffered from mental retardation, life imprisonment without probation or parole was the only sentence available to Petitioner were he found guilty at trial (*Id.* at 7).

On November 20, 2014, Petitioner filed the current Section 2254 Petition in which he raises the following ground for relief: Plea Counsel was ineffective for failing to obtain a pretrial determination of his mental retardation which, if decided in the affirmative, would render him ineligible for the death penalty (Doc. 1 at 3). Petitioner asserts that as a result of this allegedly deficient performance by counsel, his guilty plea is invalid (*Id.* at 6).

## II. DISCUSSION

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence

5

presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

In order to state a claim of ineffective assistance of trial counsel, Petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id.* In the context of a guilty plea, a petitioner demonstrates ineffective assistance of counsel if, first, counsel's performance was deficient under the *Strickland* standard and, second, a "reasonable probability" exists that but for counsel's errors petitioner would not have pleaded guilty and would have gone to trial. *Missouri v. Frye,* 566 U.S. 134, 140-41 (2012) (discussing *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985)). Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).

The Missouri courts reasonably applied *Strickland*. As the state courts indicated, plea counsel acted reasonably in not requesting a pretrial determination of mental retardation. Although the Court is concerned that an evidentiary hearing was not held before the motion court, the record reflects that counsel thoroughly investigated the issue of Petitioner's mental status. *See Vogt v. United States*, 88 F.3d 587, 592 (8th Cir. 1996) (finding petitioner's trial attorneys acted reasonably in not requesting a competency hearing in part because counsel conducted a reasonable investigation of petitioner's mental condition). Further, Petitioner may

6

not have met the definition of mental retardation under Missouri law. Mo. Rev. Stat. § 565.030. The relevant portions of Missouri Revised Statute 565.030 at the time of Petitioner's plea and sentencing read:

> 4. The trier shall assess and declare the punishment at life imprisonment without eligibility for probation, parole, or release except by act of the governor:
>
> (1) If the trier finds by a preponderance of the evidence that the defendant is mentally retarded . . . .
> *********
> 6. As used in this section, the terms "mental retardation" or "mentally retarded" refer to a condition involving substantial limitations in general functioning characterized by significantly subaverage intellectual functioning with continual extensive related deficits and limitations in two or more adaptive behaviors such as communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure and work, which conditions are manifested and documented before eighteen years of age.

However, a defense expert found Petitioner's full scale IQ to be a 72. *See cf. Atkins v. Virginia*, 536 U.S. 304, 309 (2002) (Atkins had a full scale IQ of 59). Further, while a person with an I.Q. between 70 and 75 may be diagnosed as mentally retarded and defense experts reported some cognitive deficits, the reports were inconclusive as to whether these deficits were "significant" in nature. *State v. Johnson*, 244 S.W.3d 144, 153 (Mo. banc 2008). Therefore, it is a reasonable trial strategy not to move for a pretrial determination of mental retardation considering the risk that the trial court may deny the motion, and to advise Petitioner to accept a plea deal which eliminated the possibility of a death sentence. "The court does not 'second-guess' trial strategy or rely on the benefit of hindsight and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective." *Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006) (internal citation omitted).

Regardless, as the state courts noted, Petitioner was not prejudiced by counsel's alleged error. Under Missouri law, charges of first degree murder are punishable "either by death or

imprisonment for life without eligibility for probation or parole." Mo. Rev. Stat. 565.020. Therefore, even if plea counsel had moved for a pretrial determination of Petitioner's mental retardation and the trial court had granted the motion, Petition still faced a sentence of life without the eligibility of parole. Considering the substantial risk that the trial court would not have found Petitioner to be mentally retarded under the statute as well as the considerable risk that a jury could find him guilty and sentence him to death, the Court finds that Petitioner cannot show that plea counsel's alleged error prejudiced him.

### III.  CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is be **DENIED**, and this action is **DISMISSED.**

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued. 28 U.S.C. § 2253.

Dated this 24th day of January, 2018.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE